UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROY DOMENECH,

                Plaintiff,

     - against -

PARTS AUTHORITY, INC.,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-3595 (ILG) (VMS)

GLASSER, Senior United States District Judge:

Plaintiff Roy Domenech brings this action against his former employer, Parts Authority, Inc. ("Parts Authority"), alleging that it violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL"), Art. 6 § 190, et seq. and Art. 19 § 650, et seq., by not paying him overtime wages. Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that plaintiff is an outside salesman exempt from the overtime pay requirements of the FLSA and NYLL. Plaintiff cross-moves for summary judgment on his claim pursuant to the same rule, alleging both that defendant failed to adequately plead exemption as an affirmative defense and that his duties while employed by Parts Authority preclude any reasonable finder of fact from considering him to be an outside salesman. For the following reasons, defendant's motion is GRANTED and plaintiff's cross motion is DENIED.

## BACKGROUND

The following facts are undisputed except where otherwise noted. Defendant is a company based in New York and New Jersey that sells automotive and truck parts, primarily to wholesale customers. Affidavit of Yaron Rosenthal, Dkt. No. 16-1

1

(hereinafter "Rosenthal Aff.") ¶ 3.  Its majority owner and chairman is Yaron Rosenthal. Id. ¶ 1; Deposition of Yaron Rosenthal, Pl.'s Ex. 7 (hereinafter "Rosenthal Dep.") at 17:24–18:2.  Plaintiff worked for Parts Authority, or other affiliated companies majority-owned by Rosenthal such as Clearway Auto Parts and Accurate Automotive, from 1981 or 1982 until 2014.  Rosenthal Aff. ¶ 4; Deposition of Roy Domenech, Def.'s Ex. R, Dkt. No. 16-20 (hereinafter "Pl. Dep.") at 5:19–6:4.  In 2007, plaintiff became a salaried employee and was not paid overtime.  Rosenthal Dep. at 65:10-21.  In this action, plaintiff seeks damages arising from unpaid overtime for the period between June 7, 2008 and January 7, 2014.  See Pl.'s Ex. 8.

Although there are major differences between plaintiff and defendant's descriptions of plaintiff's duties, responsibilities, and job title, certain elements of plaintiff's work for Parts Authority are undisputed.  Plaintiff began his career as a driver for Parts Authority's predecessor in the early 1980s and was promoted to a machinist position after several years.  Pl. Dep. at 6:16-24; Rosenthal Aff. ¶ 4.  At some point during the 1990s, plaintiff's position changed again.  Plaintiff claims he returned to driving, delivering parts and equipment to customers, inspecting existing equipment, and performing other "customer service" as needed.  See Pl. Dep. at 8:10–9:5, 14:2-5. Defendant, in turn, claims that plaintiff was promoted to a sales position, visiting "auto repair shops, tire shops, towing companies, and body shops . . . in an effort to sell equipment, parts, and services to such customers."  See Rosenthal Aff. ¶¶ 5-6, 12-13.

Plaintiff used his own vehicle to visit customers three days per week, and was paid an allowance for expenses he accrued in doing so, though he would also, at times, use a company truck if he needed to deliver equipment.  Id. ¶ 13; Pl. Dep. at 18:15-25,

2

64:9-10; Pl. Supp. Decl. (Dkt. No. 25-2) ¶ 27.[1] Plaintiff estimates he spent "80 percent of the time" he worked "driving" and only about "an hour [to] two hours" per day at defendant's store. Pl. Dep. at 17:16-23. Every weekday morning, plaintiff would arrive at Parts Authority's office at approximately 8:30 a.m. and receive a list from his manager of 10 to 20 customers he was to visit that day. See Pl. Dep. at 14:23–16:14; Rosenthal Dep. at 65:4-9. The purpose of those visits, according to plaintiff, was installations, repairs, or inspections. See Pl. Dep. at 38:15–39:9, 40:5-13. When visiting customers, plaintiff would, according to him, occasionally hear of sales "leads" from shop owners whose equipment he was repairing or installing, call Rosenthal to determine pricing, and fill out a sales quote for the customer. See id. at 11:4–12:25. Much of the rest of plaintiff's deposition, however, contradicts his assertion that he undertook these visits in the capacity of a technician:

- Initially, plaintiff stated that his duties between 2008 and 2014 were "selling equipment," before correcting himself and testifying that "the selling was up to Yaron Rosenthal." Pl. Dep. at 10:18–11:3.

- Plaintiff categorized himself as a salesperson again by noting how "other salespeople would call me to see if I could stop in" to stores not on his assigned list. Id. at 42:22–43:8 (emphasis added).

- When pressed as to whether he did "any sales at all," plaintiff testified "no," but, when confronted with an email in which he stated that he had

---

[1] Defendant urges the Court to disregard plaintiff's supplemental declaration in opposition to defendant's motion, alleging that it directly contravenes plaintiff's deposition testimony. While defendant is correct that portions of the declaration stand in sharp contrast to plaintiff's earlier sworn statements, and that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996), to the extent that plaintiff's declaration does not contradict his deposition, the Court will consider it.

sold a "bunch of stuff" to a "new account" and intended to sell more "stock" to the customer in question, he contradicted that earlier testimony and admitted that he performed sales duties, describing them as "minimal." Id. at 14:6-9, 74:24–76:21 (referencing Def.'s Ex. E, Dkt. No. 16-6).

- Plaintiff conceded that he attended sales meetings with other salespeople and equipment manufacturers. Id. at 63:12-18.

- Plaintiff collected payments for Parts Authority, "especially [though not exclusively] the troubled accounts," and would make visits to customers "looking out for the store, what the competition was selling, . . . what we were up against, and . . . what parts they were ordering from who." Id. at 74:5-12.

- Plaintiff admitted to entering multiple comments into defendant's sales management system indicating that he was making sales, e.g.,[2]

    o "trying to get more out of this guy in the parts. buying but very little[.]" Def.'s Ex. A (Dkt. No. 16-2) at DEF 106.

    o ". . . buying more parts[,] sold him a lift. . ." Id.; Pl. Dep. at 88:16-18.

    o "big arch fan[,] tried to get more business from the guy[.]" Def.'s Ex. A at DEF 107; Pl. Dep. at 89:13-14.

---

[2] Plaintiff's strenuous objection as to the admissibility of these entries on grounds that they somehow lack a proper foundation is frivolous. Plaintiff admitted at his deposition that he is the author of all of the statements in defendant's Exhibit A, and that he wrote them because defendant "wanted a report of the customers I had been seeing." See Pl. Dep. at 87:22–88:7. His belated attempt to disavow that clear admission in the face of a summary judgment motion is unavailing.

4

- o "takeing [sic] [customer] to a [Mets] game [o]n Au[g]ust 10th. . ." Def.'s Ex. A at DEF 110; Pl. Dep. at 92:4-21 (in which plaintiff explained that Parts Authority would "give out free tickets" to Mets games "in order for them to get more business")
- o "working hard to get this guy . . . I sold [him] on the [A]kabono brake program and got my check[.]" Def.'s Ex. A at DEF 111.
- o ". . . sold him a lift 12000 pounds." Def.'s Ex. A at DEF 112; Pl. Dep. at 93:2-8.

Plaintiff also installed automotive lifts for defendant's customers. Rosenthal Aff. ¶ 21. According to plaintiff, after a contractor whom defendant regularly hired to install such lifts became increasingly unreliable, Accurate Automotive paid for plaintiff to receive lift installation training in 1993, and he began installing lifts immediately thereafter. Defendant claims plaintiff began installing lifts in 2007 in order to supplement his income. Compare Pl. Dep. at 21:14–23:8, 97:14–98:2 with Rosenthal Aff. ¶ 21. Defendant would pay plaintiff $350 per installation, separately from and in addition to his regular salary. Pl. Dep. at 24:6-18. Plaintiff would hire additional workers to assist him with installations, though the parties dispute the extent to which those additional workers were paid by plaintiff or defendant. See Pl. Dep. at 27:8-22; Rosenthal Dep. at 42:25–43:20.

In his declaration opposing defendant's motion for summary judgment, plaintiff claims he conducted 350 lift installations between 2008 and 2014. Pl. Supp. Decl. ¶ 17. By contrast, Rosenthal estimated that plaintiff had installed 150 lifts over approximately the same period of time, see Rosenthal Dep. at 48:2-9, and defendant has submitted

business records indicating that it made only 111 lift installation payments to plaintiff between March 2009 and November 2013. Def.'s Ex. L (Dkt. No. 30-1).

Plaintiff commenced this action on June 7, 2014. Dkt. No. 1. Defendant answered on August 4, 2014, raising a defense that plaintiff "may be exempt from overtime requirements" without identifying any specific exemption. Dkt. No. 8 ¶ 53. Discovery closed on March 3, 2015, and the parties filed their respective motions for summary judgment on April 29, 2015. Dkt. Nos. 16-18. Opposition papers were filed on June 1, 2015, and replies on June 15, 2015. Dkt. Nos. 22-28. In response to an order from the Court (Dkt. No. 29), defendant submitted a revised copy of its Exhibit "L," which had initially been filed in an incomplete form, on July 21, 2015. See Dkt. N0s. 30 & 31. The Court heard oral argument on July 24, 2015, at which time it permitted plaintiff to address the belatedly-submitted exhibit. Dkt. No. 32.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party. . . . A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks and citation omitted). The party moving for summary judgment bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding the motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all

6

ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (internal citation omitted).

## DISCUSSION

The FLSA generally requires employers to pay employees overtime pay for any time they are required to work beyond a workweek of forty hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). The implementing regulations of the NYLL require employers in New York to pay "overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of" the FLSA. 12 N.Y.C.R.R. § 142-2.2.

Employees covered by the FLSA and NYLL may sue employers who fail to provide overtime to recover the amount of their unpaid wages along with liquidated damages, costs, and fees as the circumstances dictate. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198. Several categories of employees are exempt from the statutes' overtime pay requirements, however, including those who work in an "outside sales" capacity. 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.500. Defendant argues that plaintiff is an outside salesperson as that term is defined by the FLSA's implementing regulations, and therefore cannot prevail on his overtime claims as a matter of law. Plaintiff responds that defendant waived this defense by failing to raise it with the specificity that the Federal Rules of Civil Procedure require, and further claims that, even if the defense had been properly raised, it is inapplicable, which warrants granting summary judgment to plaintiff.

### I.  Waiver of Exemption Defense

Federal Rule of Civil Procedure 8(c) requires that parties "affirmatively state any avoidance or affirmative defense" in their answers. "The rule is intended to notify a party of the existence of certain issues" in dispute, Doubleday & Co., Inc. v. Curtis, 763 F.2d 495, 503 (2d Cir. 1983), and while its language is mandatory, it need not be mechanically applied to require waiver of inartfully pled (or even unpled) defenses raised at the summary judgment stage, so long as plaintiffs were on notice regarding those defenses and had ample opportunity to respond. See, e.g., Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Ramirez v. Riverbay Corp., 35 F. Supp. 3d 513, 529 n.14 (S.D.N.Y. 2014).

The Ninth Affirmative Defense in defendant's Answer states that plaintiff "may be exempt from overtime requirements." See Dkt. No. 8 ¶ 53. "In determining whether general, non-specific language in a defendant's answer, as was used here, suffices to preserve an affirmative defense, an inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." Williams v. Ashland Eng'g Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136 (1st Cir. 2000); accord Hernandez v. City of Hartford, 30 F. Supp. 2d 268, 270-71 (D. Conn. 1998).

Here, plaintiff was on notice from the outset of this action that defendant's principal defense would be the outside salesperson exemption, as evinced by his counsel's admission at the initial conference before the magistrate judge that "[t]he issue will be the exemption . . . we don't believe [plaintiff] was much of a salesman." See Declaration of Desiree M. Gargano, Ex. A (Dkt. No. 23-1) at 2:14-23. Furthermore,

8

plaintiff has had multiple opportunities to respond to defendant's invocation of the exemption in opposing its motion for summary judgment and briefing his own cross motion.³  Given the foregoing, plaintiff cannot reasonably argue that he suffered "surprise or unfair prejudice" as a result of defendant's assertion of the outside salesperson exemption.  See Williams, 45 F.3d at 593.  He is therefore not entitled to summary judgment on waiver grounds.

### II. Outside Salesperson Exemption

"The exemption question under the FLSA is a mixed question of law and fact. The question of how the employees spent their working time is a question of fact.  The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."  Pippins v. KPMG, LLP, 759 F.3d 235, 239 (2d Cir. 2014) (quoting Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012)). The burden of proving an employee exempt from the FLSA rests on the employer.  E.g., Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). Exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

---

[3] Plaintiff makes the specious argument that defendant's alleged failure to provide him with documents requested during discovery should preclude it from raising the outside sales exemption defense because those missing documents provide crucial details regarding plaintiff's duties as a technician.  Plaintiff was well aware early on that defendant was raising the outside sales exemption and yet failed to raise this alleged dispute about documents central to his case until facing a dispositive motion after the close of discovery.  "If the type of information sought by [plaintiff] is critically important, then [he] should have moved, long ago, to compel a response to [his] [d]ocument [r]equest[s] . . . . At this point, [defendant] is entitled to proceed with its summary judgment motion, without having to go back and litigate discovery disputes that were never brought to its or the Court's attention at the time when all such disputes were supposedly being raised and addressed."  DC Comics v. Kryptonite Corp., No. 00 Civ. 5562, 2002 WL 31159121, at *3 (S.D.N.Y. Sept. 26, 2002).

9

To fall under the outside sales exemption to the FLSA's overtime requirements, an employee's primary duty must involve making sales or obtaining orders/contracts for services or the use of facilities for which consideration will be paid by the customer, and the performance of that primary duty must be "customarily and regularly" undertaken away from the employer's place of business. 29 C.F.R. § 541.500(a). "[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work." Id. § 541.500(b). The parties do not dispute that plaintiff customarily and regularly worked away from Parts Authority, which leaves only the issue of whether his primary duty while away from the store was sales in determining whether summary judgment is appropriate.

In evaluating whether exempt work is an employee's primary duty, the FLSA's implementing regulations urge consideration of such non-exclusive factors as (1) the relative importance of the exempt duties as compared with other types of duties, (2) the amount of time spent performing exempt work, (3) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee, and (4) the employee's relative freedom from direct supervision. See Callari v. Blackman Plumbing Supply, Inc., 988 F. Supp. 2d 261, 277 (E.D.N.Y. 2014) (quoting 29 C.F.R. § 541.700(a)).[4] Consideration of these factors is a fact-intensive inquiry to be made on a case-by-case basis in light of the totality of the

---

[4] Some courts have highlighted additional factors to consider when an outside salesperson exemption defense is raised as to employees who "engage in sales [but] also perform a significant amount of non-sales work." See, e.g., Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 471 (S.D.N.Y. 2008) (citing Nielsen v. DeVry, Inc., 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003)). These factors derive from an earlier version of 29 C.F.R. § 541.504 ("Drivers who sell"), and neither party claims that plaintiff falls under their ambit. Plaintiff does argue that he performed a large amount of non-sales work by installing automotive lifts, but as discussed infra, even evaluating the evidence in the light most favorable to plaintiff, the number of lift installations he allegedly performed is insignificant in comparison to the amount of sales work he conducted.

circumstances, and no one factor is dispositive.  See, e.g., Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 523 (S.D.N.Y. 2013); Clougher v. Home Depot U.S.A., Inc., 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010).

Using this framework to evaluate the evidence the parties have presented, the Court finds that defendant has met its burden of proving plaintiff exempt from the FLSA and NYLL's overtime requirements.  Despite plaintiff's inconsistent claims to the contrary at his deposition and in his declaration opposing defendant's motion, the record evidence shows he was an outside salesman first and foremost.

### A.  Relative Importance of Exempt Work

Plaintiff's claim that his daily visitations to Parts Authority customers were in the capacity of a technician, "doing service or installing something," Pl. Dep. at 9:24-25, is fatally undercut by the multiple other instances in his deposition testimony referenced supra, in which he admitted that he worked in sales, as well as by his own entries in defendant's customer management system.  See, e.g., Pl. Dep. at 10:18–11:3, 42:22–43:8, 74:24–76:21, 87:22–93:8; Def.'s Ex. A.  While the Court must look beyond the titles and labels the parties assign to plaintiff in determining his primary duty, his own tacit and express admissions are "highly probative."  See Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988) (internal citations omitted).

Plaintiff relies heavily on his declaration in opposition to defendant's motion in an attempt to focus attention away from his prior admissions, but courts in the Second Circuit are particularly reluctant to credit declarations that allege critical, obviously material facts that were contradicted by or not mentioned in deposition testimony, noting that such circumstances strongly suggest a sham declaration.  See Golden v. Merrill Lynch & Co., Inc., No. 06 Civ. 2970, 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6,

11

2007) (citing Bunting v. Nagy, 452 F. Supp. 2d 447, 460 (S.D.N.Y. 2006)). "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility," courts are permitted to "pierce the veil of [a] complaint's factual allegations, dispose of some improbable allegations, and dismiss [a] claim." See Shabazz v. Pico, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, D.J.) (citing, inter alia, Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (internal quotation marks and alterations omitted).

Even assuming arguendo that plaintiff's contradictory deposition testimony and conclusory declaration are remotely plausible, however, no reasonable finder of fact could conclude that plaintiff's most important duty was anything other than sales when confronted with the evidence referenced above. Plaintiff clearly functioned as a salesperson, albeit one whose technical expertise informed his sales. See, e.g., Pl. Dep. at 10:18–11:3, 42:22–43:8, 47:21–48:2, 51:16–53:19, 74:24–76:21, 87:22–93:8; Def.'s Ex. A. The central importance of plaintiff's sales work to his job weighs heavily in favor of its designation as his primary duty.

## B. Amount of Time Spent Performing Exempt Work

Plaintiff argues that, even if his sales work was important to his job, it nevertheless constituted a minimal portion his work, owing to the large number of automotive lifts he installed on defendant's behalf.[5] Defendant, in turn, argues that plaintiff installed lifts as an independent contractor, and that, in any event, the amount of time plaintiff spent installing lifts was minimal in comparison to his sales efforts.

### 1. Employee/Independent Contractor Dispute

To determine whether a worker qualifies as an employee under the FLSA rather than an independent contractor, courts frequently consider (1) the degree of control

---

[5] While plaintiff also makes reference to the servicing, inspecting, and delivery work he allegedly performed for defendant, those activities, as discussed supra, were incidental to his role as a salesman.

exercised by the employer over the employee, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative necessary to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business. Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008) (quoting Brock, 840 F.2d at 1058-59). As with the factors to consider in determining an employee's primary duty, these factors are non-exclusive, and no one factor is dispositive—courts must consider the totality of the circumstances in making a determination as to whether a plaintiff's work is performed as an independent contractor or an employee. See id. at 143.[6]

The application of the above factors to the submissions in support of and opposition to these motions lead to the conclusion that the degree of control exercised by defendant over plaintiff was not significantly more than scheduling the installation of lifts as required by specific customers. It is not clear to what extent the lifts to be installed were also sold to the customers by plaintiff. It is not disputed that skill was required to install a lift and that the plaintiff acquired that skill through training paid for by defendant's affiliate. It is fair, therefore, to regard lift installation as part of plaintiff's job, but not integral to his duties as a salesman and, in an overview of his employment, a minor responsibility.

2.  **Time Spent Installing Lifts**

---

[6] The test as to whether work is performed as an independent contractor for the NYLL's purposes is "slightly different" from but "substantially similar" to the FLSA's test in that it focuses on the totality of the circumstances. See Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012). The Court finds, for the same reasons discussed in its FLSA analysis, that plaintiff's work installing lifts was part of his regular employment as far as the NYLL is concerned.

13

The parties dispute the number of lifts plaintiff installed between 2008 and 2014. While defendant, citing to its payment records from 2009 to 2013, indicates that plaintiff cannot have installed significantly more than 111 lifts, plaintiff, citing to nothing but his own memory, estimates the number to be closer to 350. Compare Def.'s Ex. L with Pl. Supp. Decl. ¶ 17. Even crediting plaintiff's highly dubious number, however, the Court concludes that the installation of lifts did not make up a significant portion of plaintiff's work.

Assuming a constant rate of installation, 350 lifts installed over the course of 5.5 years would be approximately 5 installations per month. Even if installing a lift took a full day, plaintiff's testimony that he worked more than 40 hours a week over more than 5 days per week demonstrates that, on the whole, lift installation was not plaintiff's primary duty, or even 25% of the work he conducted. Furthermore, entries plaintiff made in defendant's sales records indicate that he was responsible for selling lifts (see, e.g., Def.'s Ex. A at 106-07, 109), and, to the extent he installed the lifts he sold, "work performed incidental to and in conjunction with the employee's own outside sales . . . shall be regarded as exempt outside sales work." See 29 C.F.R. § 541.500(b). Given the foregoing, the record is clear that plaintiff spent most of his time performing outside sales work, which supports finding that work to be his primary duty.

### C. Relationship Between Plaintiff's Salary and Wages Paid to Other Employees

Neither party has submitted evidence comparing plaintiff's salary to other Parts Authority employees' earnings. Since it is defendant's burden to demonstrate plaintiff is exempt from overtime, this failure weighs against a finding that plaintiff's primary duty

14

was outside sales, but the other three factors and the totality of the circumstances outweigh this lone factor's negative impact on defendant's summary judgment motion.

### D.  Relative Freedom from Direct Supervision

There is no serious dispute between the parties that plaintiff spent most of his day driving, free from direct supervision. At times, plaintiff would file reports from home regarding customers he visited, or return directly home after completing his customer visits for the day, rather than working from the Parts Authority office. See Pl. Dep. at 26:15-25, 96:23–97:5. Rosenthal testified that salespeople were required to make sales calls between 9:00 a.m. and 5:00 p.m., but that "their time is their own, if they choose to see [customers] earlier or later" within that time period. Rosenthal Dep. at 61:5-17. Thus, this factor, too, weighs in favor of a finding that plaintiff's outside sales duties were his primary ones.

In short, three of the four typical factors evaluated in determining an employee's primary duty, as well as the overall totality of the circumstances, weigh overwhelmingly in favor of finding that plaintiff's primary duty was outside sales. No reasonable finder of fact could conclude that plaintiff was anything other than an outside salesman with a technical background, rather than, as he contends, a technician with minimal sales duties. He is therefore exempt from the overtime requirements of the FLSA and NYLL, which warrants granting summary judgment to defendant.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED and plaintiff's cross motion for summary judgment is DENIED. The Clerk of

Court is directed to enter judgment in favor of defendant, and to close this case.

    SO ORDERED.

Dated:    Brooklyn, New York
           August 3, 2015

                              /s/
                          I. Leo Glasser
                          Senior United States District Judge